# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ANITA GARRETT ALLEN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KILOLO KIJAKAZI, )<br>Acting Commissioner of Social )<br>Security, )<br>Defendant. ) | 1:20CV760 |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Anita Garrett Allen brought this action to obtain review of a final decision of the Commissioner of Social Security[1] denying her claim for social security disability insurance benefits and a period of disability. The Court has before it the certified administrative record and cross-motions for judgment.

## I. PROCEDURAL HISTORY

In 2012, Plaintiff filed an application for disability insurance benefits and a period of disability alleging a disability onset date of April 1, 2011. (Tr. 169-178, 681, 703-704.) The application was denied initially and upon reconsideration. (Tr. 13.) After a hearing (Tr. 93-101, 103-110), the ALJ concluded that Plaintiff was not disabled under the Act (Tr. 13-22). The Appeals Council denied a request for review. (Tr. 1-6.) Plaintiff appealed and the Court remanded for further evaluation of Plaintiff's systems. (Tr. 734-55.) On remand, the ALJ held

---

[1] President Joseph R. Biden, Jr. appointed Kilolo Kijakazi as the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew M. Saul as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

a new hearing (Tr. 700-725) and then concluded again in a new decision that Plaintiff was not disabled under the Act (Tr. 681-91). On June 18, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (Tr. 671-77.)

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court, therefore, is not whether Plaintiff is disabled but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the relevant sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. § 404.1520. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] The ALJ determined at step one that Plaintiff had not

---

[2] "The Commissioner uses a five-step process to evaluate disability claims." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged

2

engaged in substantial gainful activity from the alleged onset date of April 1, 2011 through her date last insured of September 30, 2013. (Tr. 683.) The ALJ next found the following severe impairments at step two: "left shoulder strain status-post surgery; obesity; cervical spine degenerative disc disease status-post ACDF; osteoarthritis; fracture of the right tibial plateau; degenerative disc disease lumbar spine; chronic obstructive pulmonary disease (COPD)." (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1. (Tr. 684.) The ALJ next set forth Plaintiff's Residual Functional Capacity ("RFC"), concluding that she could perform light work with the following additional limitations:

> except the claimant could lift and carry ten pounds occasionally and ten pounds frequently, stand and walk for two hours, and sit for six hours. The claimant could occasionally balance, frequently stoop, crouch, kneel, and climb ramps and stairs, occasionally crawl, and never climb ladders, ropes, or scaffolds. The claimant could not push, pull, or reach overhead with her left upper extremity, which is her nondominant hand. The claimant could frequently handle and finger with the left upper extremity. The claimant could not have concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other pulmonary irritants, extreme heat, and hazards including unprotected heights and moving machinery.

(Tr. 685.)

---

period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her [or his] past relevant work; and (5) if not, could perform any other work in the national economy." *Id.* A finding adverse to the claimant at any of several points in this sequence forecloses a disability designation and ends the inquiry. *Id.* at 473.

3

At step four, the ALJ concluded that Plaintiff could not perform her past relevant work. (Tr. 689.) Last, at step five, the ALJ concluded that there were other jobs in the national economy that Plaintiff could have performed. (Tr. 690-91.)

## IV. ISSUE AND ANALYSIS

Plaintiff's sole argument is that "[s]ubstantial evidence does not support the ALJ's evaluation of [her] symptom testimony." (Docket Entry 13 at 6.) As explained below, this argument is unpersuasive.

Under the applicable regulations, the ALJ's decision must "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Social Security Ruling 16-3p, 2017 WL 5180304, at *10; *see also* 20 C.F.R. § 404.1529. In *Craig v. Chater*, the Fourth Circuit addressed the two-part test for evaluating a claimant's statements about symptoms. *Craig*, 76 F.3d at 594-95. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 594 (emphasis omitted) (citing 20 C.F.R. §§ 416.929(b), 404.1529(b)). If such an impairment exists, the second part of the test then requires the ALJ to consider all available evidence, including a claimant's statements about pain, in order to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [the] ability to work." *Craig*, 76 F.3d at 595.

This approach facilitates the ALJ's ultimate goal, which is to accurately determine the extent to which a claimant's pain or other symptoms limit the ability to perform basic work activities. Relevant evidence for this inquiry includes a claimant's "medical history, medical signs, and laboratory findings," *Craig*, 76 F.3d at 595, as well as the following factors set out in 20 C.F.R. § 404.1529(c)(3):

> (i) [Claimant's] daily activities;
>
> (ii) The location, duration, frequency, and intensity of [claimant's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication [claimant] take[s] or [has] taken to alleviate [her] pain or other symptoms;
>
> (v) Treatment, other than medication, [claimant] receive[s] or [has] received for relief of [her] pain or other symptoms;
>
> (vi) Any measures [claimant] use[s] or [has] used to relieve [her] pain or other symptoms (e.g., lying flat on [her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning [claimant's] functional limitations and restrictions due to pain or other symptoms.

Where the ALJ has considered these factors and has heard a claimant's testimony and observed her demeanor, the ALJ's determination is entitled to deference. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).

### 1. The Subjective Complaints Analysis Is Legally Correct and Well-Supported.

In the present case, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Plaintiff's

5

"statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. at 686.) Therefore, Plaintiff's challenge hinges on step two of the *Craig* analysis.[3]

It is undisputed that at step two of the analysis, the ALJ should not reject a claimant's statements "about the intensity and persistence of [her] pain or other symptoms or about the effect [her] symptoms have on [her] ability to work solely because the available objective medical evidence does not substantiate [her] statements." 20 C.F.R. § 404.1529(c)(2). Thus, "subjective evidence of pain intensity cannot be discounted solely based on objective medical findings." *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017).[4] However, it is also undisputed that a plaintiff's "symptoms, including pain, will be determined to diminish [her] capacity for basic work activities [only] to the extent that [her] alleged functional limitations and restrictions

---

[3] Plaintiff contends that by stating that her allegations were "not entirely consistent" with the evidence, the ALJ imposed a heightened standard in assessing her subjective complaints. (Docket Entry 13 at 8-9.) This is not a persuasive argument. The ALJ here did not conclude that an allegation had to be "entirely consistent" with the other evidence in the record to be considered reasonably acceptable. Instead, as explained at length in this Recommendation, the ALJ applied the two-step *Craig* analysis, which was susceptible to judicial review and supported by substantial evidence. *See Chandler v. Berryhill*, No. 1:17CV1346 (CMH/JFA), 2018 WL 4346703, at *11 (E.D. Va. July 26, 2018) ("Plaintiff's argument is premised on a mischaracterization of the ALJ's decision as requiring a 'perfect' case that plaintiff must meet.").

[4] This was, in fact, the problem with the ALJ's original decision that was ultimately remanded and which gave rise to the current decision. In the original decision, the ALJ specifically and unequivocally tied objective medical evidence *alone* to her decision to discount Plaintiff's subjective testimony as to a number of severe impairments. (Tr. 19-20.) This gave rise to the Court's prior decision to send the matter back for further analysis of Plaintiff's subjective complaints, including (but not limited to) Plaintiff's activities of daily living. (*See* Tr. 752-53 with emphasis added.) As explained herein, the ALJ has now relied upon the relevant factors in assessing Plaintiff's subjective allegations in a manner susceptible to judicial review and supported by substantial evidence.

6

due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4). Thus, objective medical evidence and other evidence in the record are "crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs [the] ability to work" and "[a]lthough a claimant's allegations about . . . pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." *Hines v. Barnhart*, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (quoting *Craig*, 76 F.3d at 595). According to the regulatory guidance:

> If an individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record, we will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities . . . . In contrast, if an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities . . . .

SSR, 16-3p, 2017 WL 5180304, at *8.

In the present case, a thorough review of the ALJ's decision and the record as a whole reveals that the ALJ properly considered objective medical evidence and other evidence, and explained that determination in the decision. In evaluating the evidence, the ALJ specifically

7

identified multiple reasons supporting her determination.

First, the ALJ correctly pointed out that although Plaintiff underwent a left shoulder procedure in August 2011, by December 2011, her surgeon, Karl Bolstad, M.D., documented just mildly limited range of motion. (Tr. 686, 304, 308.)

Second, the ALJ further pointed out that Thomas Sweasey, M.D., performed a cervical spine discectomy and fusion in February 2013 to correct neck pain and left arm pain and twitching. (Tr. 687, 391-393.) The ALJ accurately observed that, "[t]his operation was successful in alleviating the claimant's left upper extremity symptoms" as she told her primary care doctor just two weeks later that she felt "100% better" than before surgery and a physical examination detected no more involuntary twitching in her arm. (Tr. 687, 391, 464, 466.) Later in March 2013, Plaintiff's neurologist's notes reflect her symptoms significantly improved after surgery, and she denied numbness or tingling in either arm. (Tr. 687, 410-12.)

Third, the ALJ also accurately pointed out that in August 2013, Plaintiff had pain in her shoulder blade, but she denied numbness or tingling in either arm; reported her strength had improved and that she had only minimal muscle twitching; and stated that she had been more active and moving around more, including a trip to the beach. (Tr. 687, 476, 493-94.)

Fourth, with respect to her knee pain, the ALJ noted Plaintiff's subtle tibial fracture sustained in September 2012 did not require surgery, and at a December 2012 follow-up appointment, she said her knee was better. (Tr. 687, 358, 366.) Moreover, by January 2013, Plaintiff reported that her medications provided "great relief." (Tr. 687, 450.)

Fifth, as for her back pain, Plaintiff had a mildly antalgic gait in April 2013 and

8

diagnostic testing in August 2013 detected herniated discs in Plaintiff's lumbar spine. (Tr. 687, 445, 512.) But in September 2013, Plaintiff's gait was stable; she could change position unassisted; and she had full 5/5 motor strength and intact sensation in her bilateral lower extremities. (Tr. 687, 492.) Additionally, Plaintiff reported being more active and walked most days for exercise despite her pain complaints and Dr. Sweasey encouraged her to continue to walk and add light resistance training. (Tr. 687, 476, 491, 493; *see also* Tr. 412, 3/22/13 ("She is walking most days for exercise. There have been no stumbles, trips or falls."); Tr. 415, 3/11/13 (same); Tr. 416, 3/1/13 (same); Tr. 494, 8/7/13 (same); Tr. 497, 7/12/13 (same); Tr. 450, 1/7/2013 ("She does walk some[;] Asking about going to the gym[.]").)

Sixth, although Plaintiff carried a diagnosis of COPD, the record showed very limited treatment for the impairment during the relevant period. (Tr. 687.) Indeed, there was only a diagnosis of "probable" COPD in February 2013 and the doctor strongly encouraged Plaintiff to stop smoking. (Tr. 506.) The ALJ further observed that Plaintiff had not been hospitalized or sought emergency treatment for this condition. (Tr. 687.) In addition, pulmonary function testing from April 2015 showed "no clear cut evidence of obstructive nor restrictive defect," strongly indicating that Plaintiff did not have significant limitations due to this impairment before her date last insured. (Tr. 687-88, 637.)

Seventh, the ALJ's assessment of the various medical opinions also supported the decision to partially discount some of Plaintiff's testimony regarding her subjective symptoms. For example, the ALJ considered the evaluation of Dr. Frank Shafer, M.D., who examined Plaintiff in April 2013. (Tr. 688, 444-47.) Plaintiff described her concerns, including neck pain,

9

hand tremors, left shoulder pain, and knee pain, and said she had difficulty getting out of bed and getting dressed, but she could stand long enough to fix dinner for her family. (Tr. 444.) Dr. Shafer's examination revealed a mildly antalgic limp of the right leg due to right knee pain and poor neck range of motion (she had surgery two months before the examination), but clear lungs; no motor or sensory loss; no extremity cyanosis, clubbing, or edema; a negative straight-leg raising test; good grip strength; the ability to make a good fist; no arthritic changes in her hands; mild tenderness during flexion of her right knee with no knee swelling; and good range of motion in the remainder of her joints. (Tr. 445-46.)

Dr. Shafer had a number of impressions. With respect to Plaintiff's cervical spine, his impression was status-post neck surgery, but "[s]he says she is improved. She had a tremor of the left arm but this is improved." (Tr. 446.) Dr. Shafer also noted Plaintiff was status-post shoulder surgery, with the ability to raise her left shoulder only to 90 degrees. (Tr. 446.) He noted Plaintiff had a history of a left arm and left hand tremor that was "much improved since [cervical spine] surgery in February 2013." (Tr. 446.) Dr. Shafer noted the history of a tibial plateau fracture in September 2012 with no surgery, and that Plaintiff still had some pain in the right knee and a mild antalgic limp, but she could nevertheless fully flex her knee. (Tr. 446.) He also noted Plaintiff's reports of low back pain since a young age with pain radiating down her left leg, but observed she could flex her back well at 90 degrees; she had mild low back pain on raising the left leg; and a negative straight-leg raising test on the right. (Tr. 446.) He felt Plaintiff may have some disc disease or arthritis. (Tr. 446.) From all his, the ALJ explained that the results of Dr. Shafer's examination did not support a finding of any greater

limitations than those provided for in the RFC.[5] (Tr. 688.)

Eighth, the ALJ also credited or adopted considerable portions of Plaintiff's testimony. Specifically, the ALJ summarized Plaintiff's subjective complaints as follows, referencing both the medical record and Plaintiff testimony at two hearings:

> The claimant alleges she is unable to work due to a combination of her impairments. The claimant reports that since her alleged onset date, she has difficulty sitting, standing, walking, and lifting (Exhibit 9F/2). At her hearing in 2015, the claimant testified to neck and back pain, such that she had to frequently change positions, she could not bend over or reach overhead, and could not lift more than ten pounds. The claimant further testified to constant pain, as well as numbness in her left arm and left leg. At the hearing in 2019, the claimant added that she could only sit, stand, and walk for about twenty minutes at a time, and she required frequent breaks throughout the day due to pain.

(Tr. 686, 34-45, 706-713, 391.)

The ALJ's RFC, as noted, limited Plaintiff to lifting and carrying no more than ten pounds and forbade any overhead reaching, pushing, or pulling with her left arm. (Tr. 685.) Consequently, the ALJ largely adopted Plaintiff's testimony on these points. (*Id.*) Moreover, the ALJ further limited Plaintiff in many additional domains in which she alleged deficiencies, limiting her to only standing and walking for up to two hours; only occasionally balancing and crawling; only frequent stooping, crouching, kneeling, and climbing ramps and stairs; and only

---

[5] Plaintiff asserts that in discussing Dr. Shafer's evaluation in her brief, the Commissioner provides impermissible *post-hoc* justifications not included in the ALJ's decision. (Docket Entry 16 at 4.) However, as demonstrated above, the ALJ addressed Dr. Shafter's opinion at length in her decision and explained that it did not warrant any greater limitations. (Tr. 688.) The Court is therefore permitted to consider the ALJ's reliance on Dr. Shafter's evaluation and must therefore look at it. To the extent Plaintiff contends that Dr. Shafter's evaluation is somehow "off limits," she is mistaken.

11

frequently handling and fingering with her left arm; and never climbing ladders, ropes, or scaffolds. (*Id.*) The ALJ also forbade exposure to pulmonary irritants, extreme heat, and environmental hazards. (*Id.*) This is not a case where the ALJ ignored or failed to meaningfully address a claimant's testimony, but rather a case where an ALJ credited much of it and only decided to partially discount some of it for good reasons.

Last, the vocational expert in this case testified that two of the positions that the ALJ ultimately concluded that Plaintiff could perform (merchandise marker and furniture rental clerk) could further accommodate an individual who needed to sit and stand at will. (Tr. 690, 715-717.) Thus, even though the ALJ did not include a sit-stand option in the RFC, he made it clear at the administrative hearing when questioning the vocational expert that a number of the jobs that someone with Plaintiff's limitations could perform also permitted sitting or standing at will. (*Id.*) Consequently, even if the ALJ somehow erred by not including a sit-stand option in the RFC, any error would be harmless.[6]

### 2. Plaintiff's Arguments to the Contrary Are Not Persuasive.

Plaintiff's arguments to the contrary are not persuasive. Plaintiff asserts that "the ALJ fails to provide legally sufficient reasons to support her analysis of [the] subjective complaints." (Docket Entry 13 at 10.) However, as explained above, in addition to considering the objective medical evidence, the ALJ also considered claimant's daily activities (such as walking for exercise and going to the beach); the location, duration, frequency, and intensity of Plaintiff's

---

[6] *See Aldrich v. Colvin*, No. 3:13-CV-1292, 2014 WL 888507, at *14 (M.D. Pa. Mar. 6, 2014) ("[E]ven *if* the ALJ erred in failing to include a sit-stand option in his RFC, the evidence in the record establishes that the error would not affect the outcome of this case.").

12

symptoms (such as those detailed in the numbered paragraphs above); precipitating and aggravating factors (such as the stated difficulties with prolonged sitting, standing, or walking); the impact of medication (such as the "great relief" provided by her knee medication); treatment (such as Plaintiff's surgeries); and other measures Plaintiff took to alleviate her pain (such as the stated need to change position).

The ALJ also considered the medical opinions on the record, none of which (to the extent they provided specific functional limitations) found Plaintiff more limited than the ALJ did in her RFC determination. SSR 16-3p, 2017 WL 5180304, at *6 ("Medical sources may offer diagnoses, prognoses, and opinions as well as statements and medical reports about an individual's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms."). In fact, the non-examining state agency physicians found Plaintiff to be less limited than the ALJ did. (Tr. 688, 69-71, 84-87.) Consequently, Plaintiff's contention that the ALJ did not point to good reasons to partially discount her subjective allegations is not persuasive.

Plaintiff next makes a general assertion that the ALJ does not identify what evidence she believed to be inconsistent with the hearing testimony. (Docket Entry 13 at 11.) Nevertheless, as explained above, the ALJ gave multiple reasons, supported by substantial evidence, for concluding that some of Plaintiff's subjective complaints could be at least partially discounted.

Plaintiff further asserts that the ALJ failed to discuss how her activities of daily living

13

were inconsistent with her testimony. (Docket Entry 13 at 12.) In support of this allegation, Plaintiff contends that "[t]he closest the ALJ comes in addressing daily activities was when she stated that the RFC was appropriate 'when considering the objective medical evidence in the record, as well as claimant's reported level of activity and significant improvement following surgery." (*Id.* at 12-13, 686.) This is simply not so. As demonstrated above, the ALJ summarized Plaintiff's testimony regarding her asserted limitations and also pointed to her allegations from the medical record. The ALJ also pointed out in her decision that Plaintiff took daily walks for exercise and went to the beach. And, as noted, the ALJ pointed to Plaintiff's own repeated statements of medical improvement. This argument lacks merit.

Plaintiff next asserts that the ALJ failed by not addressing material evidence. (Docket Entry 13 at 13.) In support, Plaintiff points to an August 5, 2013 treatment note, which was a six month follow up appointment to her earlier cervical spine discectomy and fusion. (*Id.*, referencing Tr. 686, 476.) In that treatment note, Plaintiff reported that she had experienced some periodic twitching, that she was still in pain, that she could not move her neck like she could before her surgery, and that her neck was "almost" worse than before her surgery. (Tr. 476.) However, at the same time Plaintiff reported "moving around more" and going "to the beach." (*Id.*) On exam, Plaintiff's left forearm and arm were found to be twitching, and her left upper trapezius was tender to palpation, but her grip was intact. (Tr. 477.) Plaintiff was advised to restart her Cymbalta, which she had stopped taking. (Tr. 476, 478.)

The Court does not agree that the ALJ materially erred here. First, as a general matter, an ALJ need not discuss every piece of evidence in making an RFC determination. *See Reid v.*

14

*Commissioner of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)). Here, the ALJ repeatedly indicated that she considered all of the evidence (Tr. 682, 683, 685) and the Court is entitled to rely on these representations. *See Grubby v. Astrue*, No. 1:09CV364, 2010 WL 5553677, at *6 (W.D.N.C. Nov. 18, 2010) (citing *Rappaport v. Sullivan*, 942 F.2d 1320, 1323 (8th Cir. 1991)). Beyond this, the ALJ *did* mention this treatment note in her decision, pointing out that it explained that Plaintiff had become more active and had even gone to the beach. (Tr. 687, 476.) Moreover, the ALJ also accurately referenced a second August 2013 treatment note from a few days later, in which Plaintiff reported that her strength was improved, that she was experiencing minimal muscle twitching, that she had no numbness or tingling in either arm, and that despite pain (including in her left scapula), she walked most days for exercise, and did so without any stumbles, trips, or falls. (Tr. 494, 687 "[A]t an appointment in August 2013, the claimant endorsed some pain in her left scapula, but she denied any numbness or tingling in either ha[n]d, she reported her strength had improved and she had only minimal muscle twitching, and she had stated a few days earlier that she had been more active and moving around more, including a recent trip to the beach.") Finally, as explained, the ALJ limited Plaintiff to a reduced range of light work that involved lifting no more than ten pounds, no overhead reaching with her left arm, and many other additional postural and environmental limitations. The Court can see no error here.

Plaintiff similarly faults the ALJ for "fail[ing] to address" a treatment note dated eight days after her date last insured in which a physical examination revealed that she was unable to reach her left arm above her head, that she was limping with an unstable gait, and that she

15

was unable to tandem walk without difficulty. (Docket Entry 13 at 13-14 referencing Tr. 487.) There was no material error here. As explained above, in addition to all the other evidence discussed above that supported the conclusion that Plaintiff could perform a reduced range of light work, the ALJ also pointed to evidence that Plaintiff walked daily for exercise without any stumbling, tripping or falling, and pointed further to evidence that Plaintiff went to the beach. Moreover, the ALJ accommodated any deficits suggested by the treatment notes Plaintiff now references by excluding her from overhead reaching with her left arm and by further limiting her to standing for no more than two hours a day. And, as noted earlier, at least two of the jobs the ALJ and vocational expert identified permitted Plaintiff to sit and stand at will.

Plaintiff's arguments are essentially an invitation for the Court to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ, which are activities outside of this Court's purview. *Craig*, 76 F.3d at 589. The standard of review here is not whether conflicting evidence might have resulted in a contrary decision, but it is whether substantial evidence supports the ALJ's decision. Based on the evidence before the ALJ, the ALJ conducted a proper evaluation of subjective symptoms and cited substantial evidence in support of her analysis.[7]

---

[7] Plaintiff has also filed a response brief citing subsequent authority—*Collins v. Yellen*, 141 S.Ct. 1761 (2021) and an opinion from the Office of Legal Counsel for the Deputy Counsel to the President—unrelated to any issue previously raised in this case. Plaintiff asserts that this authority "shows that the Commissioner's final decision denying [her] application for benefits is constitutionally defective." (Docket Entry 16 at 1-2.) It is not self-evident to the undersigned why this would be the case, and Plaintiff fails to make any non-conclusory argument in support of this newly stated claim. This argument fails for those reasons alone. Moreover, judges in this district have rejected arguments involving these authorities and the undersigned sees no reason to recommend otherwise here. *See*

## V. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is legally correct, supported by substantial evidence, and susceptible to judicial review. Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Judgment (Docket Entry 11) be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 14) be **GRANTED**, and the final decision of the Commissioner be upheld.

                                                                                       /s/ Joe L. Webster
                                                                                       Joe L. Webster
February 16, 2022                                                   United States Magistrate Judge

---

*Ronnie Hutchens v. Comm'r of Soc. Sec.*, No. 1:20-cv-1124, 2021 WL 5834409 (M.D.N.C. Dec. 9, 2021) (Auld, M.J.) *recommendation adopted*, slip op. (M.D.N.C. January 5, 2022) (Eagles, J.); *Webb v. Kijakazi*, No. 1:20CV714, 2021 WL 5206498, at *15 n.12 (M.D.N.C. Nov. 9, 2021) (Auld, M.J.) *recommendation adopted*, slip op. (M.D.N.C. Dec. 9, 2021) (Biggs, J.).